UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| LAWRENCE HAYES,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>GUY GROOT, et al.,  )<br>)<br>Defendants.  )<br>) | 13-CV-3212 |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge:**

Plaintiff, proceeding pro se and detained in the Rushville Treatment and Detention Center, pursues claims that Defendants were deliberately indifferent to a serious risk created by requiring Plaintiff to room with an allegedly violent, racist resident, and by punishing Plaintiff for not complying with an order to return to the room.  Plaintiff no longer lives with the roommate.

Defendants move for summary judgment, which will be granted.  The evidence shows that Plaintiff was never at a serious risk of harm from his roommate, nor were Defendants deliberately indifferent to Plaintiff's problems with his roommate.

# SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

# FACTS

Plaintiff is detained in the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Act. He has been at the Rushville facility since about 2007.

On some unspecified date, Plaintiff asked to be roomed with Resident Hernandez because Plaintiff wanted to live on Hernandez's unit. (Pl.'s Dep. pp. 15-16.) Plaintiff was aware that Mr. Hernandez had a habit of using racial epithets and getting into fights, but

Plaintiff had not had a problem with Mr. Hernandez and believed that they had a good friendship. (Pl.'s Dep. pp. 42-43, 44.)

Plaintiff's request to room with Mr. Hernandez was granted. Plaintiff does not recall the date that Plaintiff moved into the room with Mr. Hernandez, but it may have been in the Spring of 2012. The parties agree that, on January 23, 2013, Plaintiff and Mr. Hernandez asked to be moved to a different room on the unit, and the request was granted. (Undisputed Fact 11, d/e 40.)

At some point after the two became roommates, Plaintiff cannot recall exactly when, Mr. Hernandez began trying to pick a fight with Plaintiff over trivial matters, making racial comments to Plaintiff, and being loud, argumentative, and generally difficult to live with. (Pl.'s Dep. pp. 18, 27.) Mr. Hernandez never did actually try to fight Plaintiff, and Plaintiff admits the fight would not have been fair to Mr. Hernandez because Mr. Hernandez is significantly smaller than Plaintiff. (Pl.'s Dep. pp. 19, 28.) Plaintiff was not afraid of Mr. Hernandez physically hurting Plaintiff, but he was afraid of the unpredictability of Mr. Hernandez's behavior. (P.'s Dep. p. 28.) Plaintiff complained verbally to unspecified guards from time to time, but Plaintiff persevered in trying to struggle

through these difficulties, as required by his treatment team. (Pl.'s Aff. 9. De 44-2.) A therapy progress note from May 28, 2013, states that Plaintiff had, at that time, "indicated that he and his roommate are getting along well." (5/28/13 progress note, d/e 37-4, p. 7.)

Difficulties came to a head in mid-June of 2013. On or about June 14, 2013, Plaintiff learned that his mother had passed away. Addressing Plaintiff, Mr. Hernandez referred to Plaintiff's mother as a "worthless nigger" and said he was glad that "the nigger bitch is dead." (Pl.'s Aff. para. 11.) The night of June 17, 2013, Plaintiff asked Mr. Hernandez if the fan could be turned down. Mr. Hernandez "jumped out the bed and said, "I'm tired of this crap. I'm going to beat your ass, and positioned himself like he wanted to fight. I told him I don't want to fight him. I told him to climb back in his bed, and I didn't want to deal with him." (Pl.'s Dep. p. 50.)

The next morning, June 18, 2013, Plaintiff told guards that he needed to talk to someone because he could no longer tolerate Mr. Hernandez. Defendant Hougas arranged for Plaintiff to move to the infirmary. That day, Plaintiff's therapist sent an email to other members of Plaintiff's therapy team, asking if Mr. Hernandez could be moved to a different room. (6/18/13 email, d/e 44-2, p. 3.)

Follow up emails show that Plaintiff's treatment team were trying to arrange for different rooming for Plaintiff. (d/e 44-2, pp. 2-3.)

On June 21, 2013, Defendant Hougas directed staff to tell Plaintiff that it was time for Plaintiff to move back to his room. (6/21/13 email, d/e 44-2, p. 5.) Hougas avers that she had put Plaintiff in the infirmary on a temporary basis, so that Plaintiff could grieve his mother's passing. (Hougas Aff. para. 3, d/e 40-1, p. 1.) Plaintiff refused to move back to the room with Mr. Hernandez. Drawing inferences in Plaintiff's favor, Defendant Hougas caused another staff member to write Plaintiff an incident report for refusing housing. However, Hougas did not force Plaintiff to move back with Mr. Hernandez. Instead, Plaintiff was moved to a smaller room in the infirmary while the issue was sorted out. (6/21/13 email, d/e 44-2, p. 5.)

On June 25, 2013, Plaintiff received a notice to appear before the behavior committee on charges of interfering with facility operations/disobeying a direct order/violating rules based on Plaintiff's refusal of housing. The next day, Plaintiff appeared before the Behavior Committee. Defendant Hougas was on the committee, even though she had caused the incident report to be

written. Defendants Groot and Caraway were also on the committee.

The behavior committee found Plaintiff guilty of interfering with facility operations, a major violation. However, Plaintiff's punishment was not major: the committee demoted Plaintiff for 30 days to "B" status and directed that he wear the black box restraint on trips outside the facility for the next 90 days. The behavior committee also recommended that the Rooming Committee "make suitable housing recommendations." (6/26/13 behavior committee report.) Plaintiff stayed in the infirmary until he was moved to a different unit with a different roommate. As of Plaintiff's deposition in March of 2014, Plaintiff still lived with that roommate, with whom he gets along fine. (Pl.'s Dep. pp. 22, 46.)

## ANALYSIS

In the context of this case, the Eighth Amendment prohibits Defendants from being deliberately indifferent to a substantial risk of serious harm to Plaintiff. Brown v. Budz, 398 F.3d 904, 909, 913 (7th Cir.2005).

Plaintiff's evidence shows that Plaintiff was not at a substantial risk of serious harm from Mr. Hernandez. Plaintiff admits that he

did not fear his roommate. The two never actually fought, and the roommate was substantially smaller than Plaintiff. Even on the night that Mr. Hernandez hopped off the bed to invite Plaintiff to fight, Plaintiff simply told Mr. Hernandez to go back to bed and waited until the morning to notify security aides that he could no longer live with Mr. Hernandez. Before then, Plaintiff had attempted to work through his problems with Mr. Hernandez, with varying degrees of success.

Further, no one was deliberately indifferent to Plaintiff's problem. Once Plaintiff told security aides that he could no longer live with Mr. Hernandez, Defendant Hougas placed Plaintiff in the infirmary for several days, while members of Plaintiff's treatment team worked on finding a different rooming arrangement. It is true Defendant Hougas directed that Plaintiff be moved back to his room after several days in the infirmary, but Plaintiff was not forced to go back to the room. He chose to refuse the direct order and remained in the infirmary until he was given a different roommate.

Additionally, Plaintiff's punishment for refusing housing was not objectively serious enough to trigger procedural due process protections or otherwise violate the Constitution. Miller v. Dobier,

634 F.3d 412 (7th Cir. 2011)(imposition of "close" status at the Rushville Treatment and Detention Center did not trigger procedural due process protections). Plaintiff was demoted one status level for 30 days and had to wear the black box on writs. Plaintiff cannot explain what privileges he lost during those 30 days. (Pl.'s Dep. p. 38.) He contends that the demotion may eventually affect his prospects at gaining release, but that concern is speculative and would have to be raised at the appropriate time in his commitment proceedings. See <u>Sandin v. Conner</u>, 515 U.S. 472, 487 (1995)(possibility that prison disciplinary finding would affect length of sentence was "simply too attenuated to invoke the procedural guarantees of the Due Process Clause.") As for the black box, having to wear a black box once or twice on trips to Chicago (Pl.'s Dep. pp. 39-40) is not a deprivation of constitutional magnitude. <u>Miller v. Dobier</u>, 634 F.3d 412 (7th Cir. 2011)(the black box restraint is not a constitutionally significant deprivation). In short, Plaintiff's "punishment" simply did not rise to the level of punishment in the eyes of the Constitution.

Plaintiff also argues that the behavior committee failed to exercise their professional judgment when they punished him. *See*

Youngberg v. Romeo, 457 U.S. 307, 323 (1982)(decisions by professionals working at mental health institution are afforded deference and violate the Constitution only if professional judgment not exercised).  Not clear is whether the professional judgment standard even applies in this situation.  Lane v. Williams, 689 F.3d 879, 882-83 (7th Cir. 2012)(professional judgment standard inapplicable to decisions about security, logistics, and other non-treatment decisions).  In any event, Plaintiff does not meaningfully dispute that, as a general matter, "refusing to live with a roommate, especially one who was initially selected and requested by that person, causes significant hardship for the facility in finding adequate and suitable housing for both individuals."  (Hougas Aff.)

     Plaintiff has no evidence that the committee failed to exercise professional judgment when it decided to modestly discipline Plaintiff for refusing a direct order while still permitting Plaintiff to stay in the infirmary until other rooming arrangements were made.  That decision recognized the need for order and security in the facility while accommodating Plaintiff's need for a different rooming situation.

**IT IS THEREFORE ORDERED:**

1. Defendants' motion for an in camera inspection of documents that Defendants refused to produce to Plaintiff regarding his roommate's behavioral and disciplinary record is granted (46). The Court has reviewed those records and agrees that Defendants properly withheld them due to the safety and security concerns outlined in their motion. Further, the information filed under seal is irrelevant. There is no dispute that Plaintiff's roommate was difficult.

2. Defendants' motions for summary judgment are granted (d/e's 37, 39). The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.

2. If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal. See Fed. R. App. P. 24(a)(1)(c).

ENTER: 2/27/2015

FOR THE COURT:

        **s/Sue E. Myerscough**
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE